FILED

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA** 97 JUN -2 PM 1: 16
**NORTHEASTERN DIVISION**
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **FREDERICK E. SAMS**, | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-96-N-1018-NE |
| | ] | |
| **CHIPTEC, INC.**, | ] | |
| | ] | |
| Defendant(s). | ] | |

ENTERED
JUN 2 1997

**Memorandum of Opinion**

**I.   Introduction.**

In this employment discrimination action, the plaintiff, Frederick E. Sams ("Sams"), brings claims against the defendant, Chiptec, Inc. ("Chiptec") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). Specifically, the plaintiff asserts that the defendant discriminated against him on the basis of race when it terminated his employment without cause and by creating a hostile work environment. *Complaint* at 2-3 (unnumbered pages).

The matter is presently before the court on Chiptec's motion for summary judgment, filed on March 31, 1997. The motion, having been briefed by the defendant and the plaintiff having failed to oppose by brief or otherwise, was submitted at the court's regularly

39

scheduled motion docket on May 28, 1997. Upon due consideration, the motion will be granted and all claims dismissed.[1]

## II.     **Statement of Facts.**[2]

The plaintiff was hired as a machine operator in or about February 1995. In April 1995, the defendant suffered a large-scale burglary, whereupon the company immediately retained the services of an outside guard service.[3] In approximately early August 1995, Chiptec built a new guard shack. Because of security concerns, Chiptec management wanted to make it a practice that guards who were on duty were not to fraternize with company employees. On August 16, 1995, therefore, Chiptec posted a memorandum written by the company's president, Glenn Stearns, outlining a new company policy restricting its employees from being present in and around the guard office area and

---

[1] Under the terms of Exhibit D, the court's summary judgment scheduling order, that was attached to and made a part of the court's scheduling order entered on August 30, 1996, the plaintiff's response to the summary judgment motion was due on April 22, 1997. The plaintiff failed to meet this deadline and instead submitted a response on May 23, 1997, that the court did not accept. Plaintiff's counsel has a history of failure to comply with the court's orders in this cause of action. The court set a Rule 16(b) scheduling conference on August 13, 1996, to which plaintiff's counsel, J. Douglas Fields, Jr., failed to appear. Mr. Fields subsequently wrote a letter advising the court he did not receive notice of the conference. Because the court's records reflected that notice of the conference was mailed to Mr. Fields, the court entered an order on August 21, 1996, requiring Fields to pay $150.00 to defendant's counsel. The court vacated the order on August 30, 1996, with agreement of defendant's counsel. On December 6, 1996, the court ordered the parties to mediation. Pursuant to that order, mediation was scheduled for April 22, 1997. On April 22, 1997, however, Mr. Fields filed a motion to continue mediation because he had been hospitalized and was unable to attend. The court granted the motion on April 23, 1997.

While the court has refused to accept the plaintiff's out-of-time response to the motion for summary judgment, the court has nevertheless analyzed the submission and has determined that the arguments therein do not alter the court's decision.

[2] As noted above, the plaintiff failed to respond to the defendant's motion. Exhibit D states that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." *Exhibit D* at 4 (emphasis omitted) (footnote omitted). The plaintiff has not controverted any of the defendant's proposed facts. Accordingly, the defendant's statement of undisputed facts will be deemed admitted for purposes of the motion for summary judgment.

[3] The defendant originally hired Murray Guard Service but terminated that company's services when it allowed Chiptec employees to violate Chiptec's anti-tobacco policy. Chiptec then retained the services of Vinson Guard Service.

reiterating a company prohibition on the use of tobacco products on Chiptec premises. The memorandum was posted on the glass-encased employee bulletin board located between the time clock and the employee break room door. Additionally, one to two days after the policies were posted on the bulletin board, company supervisors verbally warned their employees to avoid the area in and around the new guard shack.

The memorandum was posted after an incident on August 15, 1995, involving several Chiptec employees. These individuals were filmed on videotape smoking in the presence of and with the implicit approval of their supervisor, Tyrone Jones, in violation of the company's anti-tobacco policy. Upon being questioned by Chiptec management, they admitted to violating the policy. Terrence McCall, the owner and CEO of Chiptec, discharged Jones following the incident. The majority of the employees in violation of the policy were white, and none of them were terminated.

Approximately two weeks earlier, James Collier, a white employee, was suspended for fighting. There is no evidence establishing the facts of the incident or the defendant's imposition of discipline on Collier. Also prior to the smoking incident, Stacy Ray was terminated for violating the anti-tobacco policy.

At around 7:30 a.m. on September 15, 1995, the guard working the day shift, Sgt. Kilpatrick, came into David Hobbs's office and gave him an Auburn baseball cap. Hobbs was working for Chiptec as personnel manager at the time and recognized the cap as belonging to the plaintiff. Hobbs had seen Sams wear the cap in the past. Sgt. Kilpatrick informed Hobbs that when he had started to clean that morning, he found the cap on the floor of the restroom in the guard shack. Hobbs then showed the cap to Glenn Stearns.

3

Stearns called Larry Carter, Sgt. Kilpatrick's supervisor and the Branch Manager of Vinson Guard Service, and asked him to determine which Chiptec employee had been in the guard office. One of the Vinson Guard Service guards, Melinda Allen, indicated that the plaintiff had been in the guard shack while wearing the cap.[4] Hobbs and Stearns then relayed the information they had received regarding the incident to Terrence McCall. McCall determined that the company would give Sams the opportunity to admit his violation of the guard shack policy. If he made such an admission, he was to be disciplined. If he failed to admit his conduct, however, he was to be terminated.

When the plaintiff arrived at work for the second shift on September 15, 1995, he was asked to attend a meeting in his supervisor's office. There, Hobbs informed Sams that his baseball cap had been found in the guard shack and asked the plaintiff why he had been present in that area in violation of company policy. The plaintiff denied being in the shack. Because Chiptec management believed that their investigation into the incident conclusively revealed that the plaintiff had violated the guard shack policy and that he had concealed the truth of his violation, the plaintiff's employment was terminated on that day. Prior to this time, Jon Turner, the plaintiff's supervisor, had learned on more than one occasion that Sams had been in the guard shack and each time had verbally warned him to avoid the area. He later informed Chiptec management of his warnings.

Terrence McCall is present at the defendant's plant for at least six to eight hours a day. He therefore is very visible and accessible to employees and actively participates in

---

[4] Sgt. Kilpatrick completed an "Employee Disciplinary Report" indicating that as a result of the incident, Ms. Allen was suspended for three days for disobeying orders.

4

their training. McCall was the only member of Chiptec management involved in the decision to terminate the plaintiff's employment. While Stearns conducted the investigation of the guard shack incident and relayed the results of his inquiry to McCall, he did not participate in McCall's decision. Likewise, Turner played no role in the disciplinary decision. He was not at work when McCall made the decision to terminate the plaintiff's employment, nor did he speak to Stearns regarding the incident. His only involvement was to inform management of his prior warnings to the plaintiff regarding the guard shack policy.

The plaintiff asserts that Turner made discriminatory statements to him. Specifically, Sams contends that Turner once remarked, "I know what your problem is, messing with white girls," *Plaintiff's Deposition* at 68-69, and that Turner did not approve of the plaintiff's relationship with a white woman. At the time Sams was discharged, Hobbs was not aware that Sams was dating a white woman, nor had Turner discussed that fact with Hobbs, Stearns, or McCall.[5]

On September 22, 1995, Turner prepared a "Separation Notice" regarding the plaintiff's termination indicating that Sams was terminated due to unacceptable conduct and had violated company policy. The disciplinary decision was unrelated to the plaintiff's race. Turner presented the Notice to Sams at a separation interview. The Notice asked

---

[5] In the plaintiff's responsive submission that was not accepted by the court, the plaintiff disputes this fact, citing assertions made by him in his deposition that Turner occasionally made the alleged comments in Hobbs's presence. Even if the court were to accept the plaintiff's response and were to view Hobbs's knowledge of the plaintiff's dating habits as a disputed fact, the court's analysis of the issues on summary judgment would not change. It remains undisputed that Hobbs played no role in terminating Sams; this decision was made by McCall alone. Thus, Hobbs's knowledge of the race of Sams' girlfriend is immaterial to the disposition of the motion.

5

the plaintiff what he liked least about the company. He responded, "Management - The way I was judged and found to have broken company policy without any proof or any witnesses. . . . The way policy is made without informing employees of changes or posting changes on Bulletin Board." *Defendant's Exhibit D* at 92-94, Exhibit 4. Sams then signed the Notice. Nowhere on the Notice did the plaintiff allege Chiptec had engaged in racial discrimination. Chiptec management has not received any reports of racial slurs, insults, or other forms of racial discrimination made by any of its employees to any supervisor or other management personnel since January 1995.

The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 26, 1995, alleging racial discrimination and disparate treatment. The EEOC sent him a Dismissal and Notice of Rights on January 1, 1996, and Sams filed the instant action on April 22, 1996.

### III.   Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The

movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's

function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

Sams claims that the defendant discriminated against him on the basis of race when it terminated his employment and by creating a hostile work environment. A plaintiff who alleges disparate treatment based upon race under Title VII must prove that the defendant acted with discriminatory purpose. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Likewise, section 1981 requires proof of discriminatory intent. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n. 16 (1984).

The plaintiff can create a rebuttable presumption of discriminatory intent by establishing a prima facie case. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). This may be done in three ways: (1) "by presenting direct evidence of discriminatory intent; [(2)] by meeting the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973); or [(3)] by demonstrating through statistics a pattern of discrimination." *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

### A. Direct Evidence.

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of discrimination." *Id.* at 582 (footnote omitted).

The plaintiff testified in deposition that his supervisor, Jon Turner, often commented on the fact that Sams dated a white woman, remarking, "I know what your problem is,

9

messing with white girls," *Plaintiff's Deposition* at 68-69, and allegedly made other general statements indicating his disapproval of the plaintiff's social association with white women. These isolated remarks, however, regardless of their frequency, are insufficient to establish a prima facie case of racial discrimination through direct evidence only, for they are not blatant enough to reasonably give rise to the inference that Sams was discharged from his employment because of his race. Furthermore, the undisputed facts demonstrate that Turner played no role in the decision to terminate the plaintiff's employment. Consequently, Turner's feelings regarding the plaintiff's dating habits are immaterial. Sams must therefore attempt to establish a prima facie case of race discrimination through either statistical or circumstantial evidence.

**B.     Statistical Evidence.**

A second means by which Sams may establish a prima facie case is by presenting statistical evidence that demonstrates a pattern and practice of race discrimination on the part of the defendant. *See Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (age discrimination case). The plaintiff has presented no statistical data; therefore, he must attempt to establish a prima facie case of discrimination through circumstantial evidence.

**C.     *McDonnell Douglas* Test.**

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie

case of discrimination.[8] "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring an articulation of some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. *Id.* "'[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.'" *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "'[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment.'" *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original). The plaintiff may establish that the

---

[8] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas-Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

defendant intentionally discriminated against him "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.'" *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir.).

### 1. Discriminatory Termination Claim.

To make out a prima facie case of racially discriminatory termination, Sams must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position he held at Chiptec; (3) his employment was terminated despite his qualifications; and either (4) Chiptec replaced him with a person outside the protected class, *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995), or (4) after his termination, his position remained open and Chiptec continued to seek applicants of similar qualifications. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996). Sams has not met this burden. He has made no assertions as to the events occurring after his termination and whether he was replaced by a person outside the protected class or

12

whether Chiptec sought applicants of similar qualifications. Accordingly, the discriminatory termination claim will be dismissed because the plaintiff cannot make out a prima facie case.

## 2.   Disparate Treatment Claim.

The plaintiff next asserts that Chiptec disciplined him more harshly than it did white employees who were guilty of similar misconduct or, alternatively, that he violated no company rule.[7] In order to establish a prima facie case of such discrimination, Sams must demonstrate that (1) he is a member of a protected class; and either (2) he did not violate a work rule; or (2) he engaged in misconduct similar to that of a person outside the protected class and (3) the disciplinary measures enforced against him were more severe than those enforced against the other persons engaged in similar misconduct. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). The plaintiff attempts to prove intentional discrimination by both of the above methods.

First, Sams disputes that he violated the guard shack rule as Chiptec contends. He therefore has established a prima facie case of disparate treatment. The burden thus shifts to the defendant to demonstrate it had a legitimate, nondiscriminatory reason for discharging Sams. This Chiptec has done, for the undisputed facts establish that Terrence McCall believed Stearn's investigation into the guard shack incident conclusively revealed

---

[7] The court cannot determine from the plaintiff's complaint whether he in fact makes this claim. The defendant's initial submission in support of its motion for summary judgment treats this allegation as a claim. Sams failed to respond to the motion, however, and thus has given the court no ability to verify the presence of the claim. Nevertheless, because the plaintiff's EEOC charges aver that he violated no work rule and that white employees were treated more leniently for committing offenses warranting discharge, the court will treat the complaint as if it makes such an assertion as well.

that the plaintiff had violated the company's policy against visiting the guard office. "The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation." *Id.* Consequently, the burden returns to Sams to demonstrate by a preponderance of the evidence that the defendant's proffered reason for discharging him is merely a pretext for discriminatory motive. The plaintiff avers that his supervisor, Jon Turner, made statements to him regarding his dating a white female. Specifically, he testified at deposition that Turner remarked, "I know what your problem is, messing with white girls." *Plaintiff's Deposition* at 68-69. Sams has presented no evidence suggesting that Turner's remarks are in any way causally related to the plaintiff's eventual termination. These isolated remarks do not establish by a preponderance of the evidence that the defendant's asserted reason for discharging the plaintiff was merely a pretext.

Alternatively, the plaintiff attempts to make out a prima facie case of disparate treatment by comparing the disciplinary measures Chiptec took against him for allegedly violating the guard shack policy with the disciplinary measures the company took against other employees for violating the same policy. *See Jones*, 874 F.2d at 1540. To establish the requisite degree of similarity between himself and his comparator, Sams must show that the white employee engaged in "'nearly identical' conduct" but was not terminated for such conduct. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984). He has not presented any evidence, however, suggesting that other Chiptec employees violated the guard shack rule. Even if the court allows the plaintiff to hold out

14

as comparators those employees who violated the anti-tobacco policy, he fails to make out a prima facie case. The undisputed facts establish that the employees who smoked on videotape did so while in the presence of their supervisor and thus with management's tacit approval. Sams, on the other hand, had been warned previously by his supervisor that he was not to go in or around the new guard shack. Furthermore, when the smoking employees were confronted with their conduct, they admitted they had violated the anti-tobacco policy. Sams asserts he did not enter the guard shack. The facts thus reveal that Chiptec did not perceive the employees involved in the smoking incident to be similarly situated to the plaintiff; therefore, the disparity in the company's treatment of its employees is not actionable. Moreover, "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones*, 874 F.2d at 1541. While the undisputed facts establish that Terrence McCall terminated the employment of both Tyrone Jones and the plaintiff, Jones was discharged because he allowed his employees to smoke on company premises in violation of the anti-tobacco policy. Such conduct is not "nearly identical" to that of Sams. Further, there is no evidence demonstrating which Chiptec supervisor or supervisors took disciplinary action against James Collier, who was suspended for fighting, or against Stacy Ray, who was terminated for violating the anti-tobacco policy. Accordingly, the plaintiff's disparate treatment claim will be dismissed.

### 3.   **Hostile Work Environment Claim.**

Finally, Sams avers that his Chiptec white supervisors harassed him, made overt racial slurs, and told him he should not date white women. To establish such a claim of hostile work environment, the plaintiff must demonstrate that the alleged conduct was so

severe or pervasive that it altered the conditions of his employment and created an abusive working environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (sexual harassment case); *see also Edwards v. Wallace Community College*, 49 F.3d 1517, 1521-22 (11th Cir. 1995) (coworkers' racial slurs must be so "'commonplace, overt and denigrating that they create[ ] an atmosphere charged with racial hostility.'") (quoting *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990)). The "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' . . . does not sufficiently affect the conditions of employment sufficient to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor*, 477 U.S. at 67). The employer will be held liable if it fails to discover a hostile atmosphere and to take appropriate remedial steps. *Busby v. City of Orlando*, 931 F.2d 764, 785 (11th Cir. 1991).

Sams testified at deposition that his supervisor, Jon Turner, commented to him on several occasions regarding the plaintiff's dating of a white woman. Such allegations are insufficient to meet the plaintiff's burden, however, for occasional comments do not create a severely or pervasively hostile work environment pursuant to the law as interpreted by the United States Supreme Court and as adopted by the Eleventh Circuit. Furthermore, Sams has made no allegation that he reported Turner's remarks to Chiptec management or that they should have been aware of the allegedly hostile environment in which he worked. Accordingly, the plaintiff has failed to make out a prima facie case of hostile work environment; therefore, the claim will be dismissed.

**V.     Conclusion.**

The plaintiff cannot establish a prima facie case for any of his three claims. Accordingly, the defendant's motion for summary judgment will be granted and the plaintiff's claims dismissed. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __29th__ of May, 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE